Booth, Chief Justice,
delivered the opinion of the court:
On January 9, 1928, the defendant obtained a judgment against the plaintiff for $45,140.56 on a counterclaim. The case as originally decided embraced the following state of facts:
The plaintiff contracted on September 4, 1918, under contract #10069, to furnish and deliver to the defendant 320,000 yards (more or less) of jute canvas. The price was fixed at $0.27 per yard. The plaintiff delivered and the defendant accepted 351,870 yards of jute and was paid for 320,000 *261 yards, leaving a conceded balance due the plaintiff of $8,604.90, i. e., 31,870 yards at the contract price. The plaintiff sues to recover this amount. The defendant filed a counterclaim and contended for a judgment against the plaintiff of either the sum of $53,745.46 or $63,653.54. The defendant’s counterclaim arose out of a contract, known as #1430 entered into by the parties on October 19, 1917. By the terms of this contract the plaintiff was to furnish and deliver to the defendant 655,600 yards of specified jute. The jute was to be delivered upon stated dates, final deliveries to be completed by January 31, 1918. The plaintiff concedes a failure to deliver all the jute required, and admits a deficit of 409,026% 3rards. Exemption from failure to deliver was claimed under a British embargo during the war forbidding the exportation of jute, and a contention that the supply of the quality required under the contract was obtainable in no other country.
On May 6,1918, May 7,1918, July 1,1918, August 13,1918, and September 4,1918, respectively, the plaintiff entered into five separate contracts for the sale of specified qualities and quantities of jute. The plaintiff supplied the contract jute, a total yardage of 1,261,406%, and at a price greatly in excess of that fixed in contract #1430, and was paid therefor. Defendant’s counterclaim is predicated upon a breach of contract #1430 and the right under the express terms of paragraph 8 of said contract to resort to the open market and purchase a sufficient quantity of jute to supply the deficiency caused by plaintiff’s failure to deliver the stipulated quantity of jute. In our former opinion we were convinced that the defendant’s contention should be sustained. We adhere to those views in so far as a breach of the contract and a right to purchase in the open market is involved.
The court was convinced on the first trial, and now adheres to that opinion, that the plaintiff clearly failed to observe the obligations of contract #1430 and is entirely without a legal defense for so doing. No effort was made to procure jute in the United States, where the supply, while not precisely of the same quality, was available; instead, the plaintiff, in the face of an obvious default, with full knowledge of the condition *262 of affairs, contracted for future deliveries at enhanced prices, and met with no difficulties in observing the later contracts. No oiler was made to deliver American jute under contract #1430 and no notice brought to the defendant that a prior contract, i. e., contract #1430, was in existence and at the time remained unperformed. The necessity of granting a new trial and entering a new judgment is predicated entirely upon a review of the record on the single point of proof of damages sustained by the defendant. The record, we think, fails to furnish proof of a market price for each style and quality of jute to be furnished under contract #1430, and, as hereafter discussed, is the one determinative factor in the reversal of our former opinion.
The plaintiff’s brief and oral argument emphasize the rule of damages where a contract of sale is breached, and especially insist that the court was in error in applying the rule in this case. Plaintiff by the terms of contract #1430 was to complete deliveries on January 31, 1918. Deliveries were never completed. The rule of damages, firmly fixed, is conceded to be, in a contract for the sale and delivery of an article, the difference between the contract price and the market price on the date of delivery or a reasonable time thereafter. The difficulty the court encountered in applying the rule was ascribable to the fact that the five subsequent contracts between the parties, commencing in May, 1918, and extending through September, 1918, were all executed in ignorance of the breach of contract #1430, without regard thereto, and were in fact totally independent transactions. We held that inasmuch as the plaintiff assented to the price fixed in the five later contracts and furnished the merchandise at that price, plaintiff had by his own conduct established the market price, and we accepted in most respects the proof of the defendant wherein the market price was fixed by an ascertainment of the average price paid to the plaintiff under the five contracts made subsequent to January 31, 1918. There are, we think, valid reasons for sustaining the holding, and the question is not free from doubt. It is to be noted, however, and the plaintiff presses the point, that a significant length of time *263 elapsed between the date of the breach of contract #1430 and the purchase of jute under the first of the five contracts, viz, May 6, 1918, and it is evident that the jute then purchased was so purchased without reference to a possible allocation of the same to the deficiency under contract #1430. Therefore, there is room for a possible injustice being done- the plaintiff by ascertaining the extent of damages done the defendant by resting the amount upon the difference between the contract price fixed in contract #1430 and the average prices fixed in the five later contracts. In the absence of sufficient proof of market price, except as to be hereafter noted, during the interim, i. e., from January 31, 1918, to September 4, 1918, we are now of opinion that the judgment for the defendant upon the counterclaim should be materially reduced. Adhering rigidly to the fundamental rule of damages, and construing the contract in accord with its express provisions, there is no evidence, except as above discussed, as to the market price of each quality of jute to be supplied'under contract #1430 immediately following the breach. The record does disclose that on May 8, 1918, style #612 of contract #1430 was procurable, and an established market price- therefor of $0.3510 existed. It is also established by the plaintiff’s own testimony that on May 15, 1918, the same could have been purchased in the open market at 27% cents per yard, making as readily ascertainable an average market price of $0.31175 per yard. Giving the plaintiff the benefit of his contention that the jute supplied on his five last contracts was not of the exact quality he was obligated to supply under his contract #1430, we now find from the record a market price for 64,000 yards of jute of the identical quality (#612) he should have and did not supply under contract #1430. The difference between the contract price of 18 cents per yard and the average market price of $0.31175 for 64,000 yards of jute amounts to $8,432.00, and against the plaintiff’s right to recover under contract #10069 this amount should be charged.
We are of the opinion that the proof of market price relied upon by the court is from point of time, within the *264 rule as to reasonableness, and we are firmly convinced that it meets in all its aspects the technical significance of the rule requiring the defendant to supply a contract deficiency by going into the open market and purchasing merchandise of the same kind and quality.
The former judgment will be set aside and the opinion of the court withdrawn and new trial granted. A judgment will, upon the new trial, be awarded in favor of the plaintiff for $172.90. It is so ordered.
SiNNott, Judge; GREEN, Judge; Moss, Judge; and Graham, Judge, concur.